640 A.2d 1152

PETRIT RAKIP, PETITIONER–APPELLEE, v. MADISON AVENUE
FOOD TOWN, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1993—Decided March 3, 1994.

Before Judges BRODY and STERN.

*Francis T. Giuliano* argued the cause for appellant (*Mr. Giuliano* on the brief).

*Kazbek Tambi* argued the cause for appellee (*Vivino* and *Rocco*, attorneys; *Mr. Tambi* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

This is an appeal by an employer contending that "as a matter of law" a workers' compensation award was made in violation of *N.J.S.A.* 34:15–36 because petitioner's injury was "relatively minor in nature."

Petitioner fell while removing cardboard from a baling machine and was awarded temporary disability benefits for the time he was

out of work. The only issue remaining for trial was whether petitioner was entitled to an award for permanent partial disability within the meaning of *N.J.S.A.* 34:15–36. The judge of compensation found that petitioner suffered such an injury and awarded him "5 percent of partial total disability."

We agree with the employer that *N.J.S.A.* 34:15–36 was designed to "eliminate awards for minor partial disabilities." *See Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984). That statute requires "a permanent impairment ... based upon demonstrable objective medical evidence [of an injury or disease] which restricts the function of the body or of its members or organs." However, given our scope of review, *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965), we conclude that there is sufficient credible evidence in the record to support the determination of the trial judge and that we must affirm the finding of 5% permanent partial disability. We cannot conclude that a 5% award is "so minor that the injury was not compensable" as a matter of law. *Perez v. Pantasote, Inc., supra,* 95 *N.J.* at 115, 469 *A.*2d 22. The Legislature has not provided a percentage of disability which is non-compensable.

Petitioner was employed by respondent as a grocery stock clerk. While pulling crushed cardboard out of a bale machine on June 29, 1991 he fell "flat [on his] back" and was rendered "unconscious" for a short time. He was taken to St. Joseph's Hospital where a CAT scan and x-rays proved negative, and he was discharged directly from the emergency room without admission to the hospital.

On July 2, 1991 petitioner was examined at respondent's clinic by Dr. Armijos who found no objective signs of injury. Dr. Armijos, however, referred petitioner to Dr. John Ambrose, an orthopedic surgeon who, following an examination on July 11, 1991, reported:

He did not spontaneously report any symptoms in the arms or legs. Physical exam revealed a 28–year–old man whose posture and attitude reflected mainly his attempt to appear to be in some kind of distress. I would describe his behavior

during the examination as transparently theatrical. He basically pretended to be unable to understand commands and to be unable to carry out anything that was asked of him. He would neither bend forward or backward at the waist, would not rise up on his toes and would not dorsiflex his feet. Reflexes in the lower extremities were brisk and symmetrical. When pinprick testing was carried out, he seemed to be in a dilemma as to how he should answer. He did not answer spontaneously, even though he was directed to respond by stating whether or not pinprick was "sharp" and whether it felt the same on both sides. He seemed to be hesitating and trying hard to figure out what response would be the most advantageous.

We checked his X-ray reports at St. Joseph's Hospital and found out that he had a negative CT scan of the brain, and negative cervical spine. His lumbosacral X-rays revealed basically scoliosis and transitional vertebrae but no evidence of trauma.

I could find no evidence of an actual injury because this patient was obstructive and transparently exaggerating his complaints, if not fabricating them altogether. Giving him the fullest benefit of the doubt, I am calling his condition a "lumbosacral sprain" and I am giving him prescriptions for physical therapy and for a mild muscle relaxant-pain reliever. I am not convinced, however, that he has any recognizable orthopedic injury at all, especially because of his overall demeanor during the examination. He is supposed to be re-evaluated here in two weeks.

Petitioner went to the physical therapy as prescribed by Dr. Ambrose "a couple of times." The physical therapy consisted of "[h]eat treatment and some exercises."

On July 25, 1991 petitioner returned to Dr. Ambrose for further evaluation. As a result of the second examination, Dr. Ambrose concluded:

He is essentially continuing what appears to be a transparent charade of pretending to be in too much pain to talk or think, or even hold his eyes open during the examination. He winces and makes intense facial grimacing when being questioned. He cannot bring himself to state whether a pinprick is sharp or not when he is touched on the lower extremities. He allows straight leg raising, the one thing which is likely to cause pain if he has any kind of genuine problem, but he doesn't allow anything else in the way of low back testing. He does not bend forward or backward on command. He walks slowly but in a non-descript manner, certainly he does not seem to have any kind of organic limp. His overall attitude appears to me to merely be obstructive and negative when attempts are made to inquire about his problems and/or examine him.

He states that he did not go for the physical therapy because he could not get a ride. Then, on second thought, he changes his mind and says that he didn't go because he had "too much pain." He didn't take any of the medicine prescribed because the pills "weren't strong enough."

He claims to have obtained the cooperation of a chiropractor who, he states, has found something wrong and is willing to treat it. I, frankly, have not found

anything wrong, and I will no longer authorize his claimed disability beyond July 28, 1991. He is due for re-evaluation here on August 1, 1991.

Petitioner subsequently returned to respondent's clinic several times where he continued to complain of pain. His temporary disability was extended to August 12, 1991. He returned to work on or about that day, "six or so weeks after the accident."

The evaluation for respondent by Dr. Irwin Jay Cohen on June 4, 1992 concluded that petitioner suffered "a cerebral concussion and a cervical and dorsal lumbosacral sprain" but that "[t]he injuries are healed and need no further treatment." Hence, Dr. Cohen "estimate[d] the permanent partial disability to be 0%."

Petitioner was the only witness at the hearing. He testified that his job required him to lift and carry boxes to the front of the store and to restock merchandise on the shelves. Although the weight of the boxes varied, he stated that he could "not perform like [he] used to perform" or "lift as required."

Petitioner also introduced the reports of Doctors Earl C. Shaw and David M. Myers of Sall/Myers Medical Associates who examined petitioner on April 9, 1992. They reported:

*PHYSICAL FINDINGS:* The patient is a 5'7" tall, 140 pound, 28–year old male. The following findings relate to the lumbar area. Inspection reveals mild curve flattening. The patient's gait is normal. There is mild tenderness through the paraspinals and iliolumbars with hardness through these muscles. Flank tenderness is noted to both percussion and palpation. There is sacroiliac joint tenderness bilaterally without palpable nodularity. Trunk flexion lacks 15 degrees, extension lacks 10 degrees, bending to the right lacks 15 degrees and to the left lacks 10 degrees, and twisting to the right lacks 15 degrees and to the left lacks 15 degrees. The extremes of these motions are productive of lumbar, sacroiliac and flank pain. Straight leg raising on the right lacks 10 degrees and on the left lacks 10 degrees. Lasegue's test on the right is moderately positive and on the left is weakly positive and Patrick's test is negative bilaterally. The patellar reflexes are physiologic bilaterally. The Achilles reflexes are active bilaterally. Peripheral reflexes are physiological.

*RECORDS REVIEWED:* We did review the records of the New Jersey Manufacturer's Clinic and noted that he was seen there July 2, 1991 and noted the findings and therapy rendered. A report of Dr. Ambrose of July 11, 1991 was reviewed, and we noted that x-rays of the lumbar spine revealed a scoliosis in the transitional vertebra. A follow-up report of Dr. Ambrose of July 25, 1991 was reviewed and the findings noted.

*DIAGNOSIS:* Residual of contusion and strain involving the lumbar area with diffuse, residual lumbar myositis.

*MED. HISTORY:* None.

*RECOMMENDATIONS:* Neuropsychiatric evaluation.

*CONCLUSION:* The objective medical findings noted in the body of this report have resulted in a permanent orthopedic disability of 17½% of total.

In order to recover an award for a permanent, partial disability, the petitioner must make "a satisfactory showing of demonstrable objective medical evidence of a functional restriction of the body, its members or organs." *Perez v. Pantasote Inc.,* *supra,* 95 *N.J.* at 116, 469 *A.*2d 22. "Objective medical evidence" requires more than subjective evidence of pain. *Ibid.* Petitioner must also demonstrate that the injury is serious enough to merit compensation. *See also Saunderlin v. E.I. DuPont Co.,* 102 *N.J.* 402, 508 *A.*2d 1095 (1986).

The employer points out that petitioner maintains his old job, and works eight hours a day, five days a week. Although petitioner returned to work and has performed his duties on a full-time basis without loss of compensation, *N.J.S.A.* 34:15–36 expressly provides that "nothing in [the] definition [of permanent partial disability] shall be construed to preclude benefits to a worker who returns to work following a compensable accident even if there be no reduction in earnings." But if the "condition[ ] does not impair an employee's working ability," the accident "will be compensable only if serious enough to interfere substantially with other aspects of the employee's life." *Perez v. Pantasote, Inc., supra,* 95 *N.J.* at 117, 469 *A.*2d 22. Here petitioner testified that the accident adversely affected his ability to lift and exercise, play sports and participate in normal activities with his children.

In concluding that petitioner sustained a 5% partial permanent disability, the trial judge stated:

I find that the petitioner is to be believed and that he does have objective findings of disability which are limitations of motion and discovered by Dr. Shaw. For example, trunk flexion lacked 15 degrees, flexion lacked 10 degrees, extension and bending to the left and right lacked 15 degrees. This is a variance [in] what Dr.

Ambrose and Dr. Cohen would have us believe as their findings. That's their opinion, of course. These are restrictions of flexion, extension and bending. If these had no meaning they would make the petitioner a basket case or some degree close thereto or in between, but they are sufficient to support a finding of disability to the lower back.

The findings of Doctors Shaw and Myers provided objective medical evidence to sustain the award. Further, based on petitioner's admission that he no longer had pain other than in his lower back, the trial judge found petitioner to be "more credible than not" and determined that "his responses were quite honest." The judge of compensation added that "[t]he petitioner is of a foreign extraction, has a basic pattern of his own which may or may not have been understood by Dr. Ambrose or Dr. Cohen and, therefore, may have colored their view." These findings warrant our affirmance of the award. *Close v. Kordulak, supra,* 44 *N.J.* at 599, 210 *A.*2d 753.

Moreover, even Dr. Ambrose referred petitioner for physical therapy and diagnosed a lumbosacral sprain, although for the reasons he stated. Furthermore, the doctors at the respondent's clinic authorized a leave of absence for approximately six weeks as a result of the accident. Finally, we note that no medical expert testified or was subject to a cross-examination. Only petitioner testified, and, as noted, he was found to be credible.

Despite the similarity in the legislative endeavor to reduce insurance costs, we do not believe that the Supreme Court's opinion in *Oswin v. Shaw,* 129 *N.J.* 290, 609 *A.*2d 415 (1992), controls this case. *Oswin* involved a different statute, *N.J.S.A.* 39:6A–8, which establishes a verbal threshold limiting recovery for non-economic losses resulting from automobile accidents. We therefore need not decide if petitioner could satisfy the verbal threshold to bring a suit for non-economic loss had his injuries been sustained in a motor vehicle accident.

The judgment is affirmed.