660 A.2d 1146

FREDERICK COLON, PETITIONER–RESPONDENT,
v. COORDINATED TRANSPORT, INC.,
RESPONDENT–APPELLANT.

Argued February 14, 1995—Decided July 3, 1995.

2

*Francis T. Giuliano* argued the cause for appellant.

*Larry S. Byck* argued the cause for respondent (*Cunningham & Byck*, attorneys).

The opinion of the Court was delivered by ·

COLEMAN, Justice.

This workers' compensation case presents the issue of whether diminution in range-of-motion alone is sufficient to satisfy the "demonstrable objective medical evidence" standard required to establish a partial-permanent physical disability. As a corollary to that issue, we must decide whether a minimum percentage of

disability should be established as a threshold for determining when a disability is too minor to justify a compensation award. We hold that range-of-motion test results are generally subjective and will not, standing alone, satisfy the statutory requirement of "demonstrable objective medical evidence" partial-permanent disability. Absent a legislative intent to create a numerical threshold to measure "minor injuries," we deem it inappropriate for the Court to do so.

I

Petitioner Frederick Colon filed a claim for workers' compensation benefits for injuries he sustained to his left shoulder and lower back in a motor vehicle accident that occurred on June 4, 1990. He was employed at the time as a tractor-trailer driver for respondent Coordinated Transport.

The parties stipulated that the accident arose "in and out of the course of employment," that petitioner lost no compensable time as a result of the accident, and that Coordinated Transport provided all reasonable and necessary medical care. The sole issue before the Judge of Compensation was whether petitioner had sustained a "disability permanent in quality and partial in character" to either his left shoulder or his lumbar spine, or both, as a result of the accident.

The Judge of Compensation found that petitioner sustained a five-percent partial-permanent disability to his left shoulder. He found no residual permanent disability in petitioner's lumbar spine.

The judge based his decision with respect to the shoulder disability on his finding that petitioner's testimony was credible, and on his conclusion that the reports of Dr. Edward Fleischman and Dr. John Costino, experts for petitioner and respondent, contained "objective evidence of the disability." Not only was the judge's description of the statutory requirement incomplete; he also failed to articulate what "objective evidence of the disability" he found in the medical reports.

On Coordinated Transport's appeal, the Appellate Division affirmed in an unpublished decision. Although the Appellate Division observed that "the findings of the judge are not articulated with extreme clarity or precision," it nonetheless found no basis for disturbing the judgment given the limited scope of appellate review. The Appellate Division established a bright-line rule of less than two and one-half percent of partial-permanent disability as a threshold for determining when a disability is to be deemed *de minimis* under *N.J.S.A.* 34:15-36. The Appellate Division rejected Coordinated Transport's request to transport to workers' compensation jurisprudence the "objective medical evidence" of disability standard that is articulated in *Oswin v. Shaw*, 129 *N.J.* 290, 609 *A.*2d 415 (1992), for the verbal threshold in automobile accident cases.

We granted Coordinated Transport's petition for certification. 138 *N.J.* 266, 649 *A.*2d 1286 (1994). We now reverse and remand for redetermination.

## II

The relevant facts with respect to the medical treatment and the alleged disability relating to the accident are not complex. As a result of the accident, Dr. Gerald Warren treated petitioner with physical therapy for approximately three weeks. Dr. Warren interpreted an x-ray taken of the left shoulder as normal. At the request of Dr. Warren, Dr. Stuart Dubowitch, an orthopedic surgeon, performed an examination of petitioner's left shoulder on August 28, 1990. He diagnosed a severe sprain of the left shoulder without internal derangement. Dr. Dubowitch ordered magnetic resonance imaging (MRI) of the left shoulder; it too was normal.

Petitioner never returned to work for respondent after the accident. Petitioner attempted to work as a tractor-trailer driver for another company. He testified that he had to quit after two days because of back pain caused by pressing the clutch and lifting heavy boxes. Since that time, petitioner has not secured employ-

ment with any trucking company. He feels that potential employers reject him because of his statement in the employment application that he has sustained an injury to his back. He blames his back injury for his inability to obtain or retain a job as a truck driver. He has, however, secured work as a security guard.

Petitioner also testified that he has recurring pain in his left arm and "once in a while" experiences pain shooting down his left arm. He complained of numbness in his third and fourth fingers of his left hand that would "come and go."

Petitioner testified that the accident has affected his everyday activities. Since the accident, he has stopped performing certain home repairs such as sheet rocking, painting, and cleaning the basement because "sheet rocking is pretty heavy and the bending" bothers his back. However, he has been able to coach little league baseball as he had prior to the accident.

Petitioner submitted into evidence a report of his expert, Dr. Fleischman, who examined him on October 16, 1991. Dr. Fleischman's examination of petitioner's left shoulder revealed the following:

> With his elbows extended supination was accomplished to 95 degrees bilaterally. Pronation was accomplished to 80 degrees bilaterally. Forward elevation of his shoulders was accomplished to 155 degrees bilaterally, with pain and clicking at his left shoulder. Abduction [movement of the left arm away from the body] was accomplished to 170 degrees bilaterally. External rotation at his shoulders was accomplished to 70 degrees bilaterally. Posterior internal rotation was accomplished with the fingers of both hands reaching the level of T9.

> Resisted elevation, downward motion, abduction, and adduction [movement toward the body] of his arms were equal in strength bilaterally. With his elbows extended and flexed pronation and supination of his arms against resistance were equal in strength. Pulling and pushing strength were equal bilaterally.

> Drop arm test was negative. Adson's was negative. Dynamometer revealed average hand grasp of 30 kg. on his left and 34 kg. on his right. Flexion at his elbows was accomplished to 140 degrees bilaterally. Both elbows extended fully.

> Active motion of his shoulders produced a very slight crepitus [a crackling or grating sound] at his left acromioclavicular joint.

> . . . .

> Forward flexion [at the lumbar spine] was accomplished with his fingers reaching to 6" from his toes, with the onset of pain and clicking in his left shoulder.

Dr. Fleischman concluded that petitioner "still has symptomatology and objective findings referable to his left shoulder...." Dr. Fleischman expressed the opinion that as of the time of the examination, petitioner was suffering a disability that was "[twenty percent] of partial total based on residuals of left shoulder strain and sprain."

Respondent's expert, Dr. Costino, examined petitioner on September 17, 1991, and his report was submitted into evidence as well. Dr. Costino's examination of petitioner's left shoulder revealed the following:

Extremities: Examination of the right and left upper extremities reveal bilateral symmetry. Examination of the left shoulder reveals complete mobility in abduction and forward flexion as well as internal and external rotation. Mobility at the left elbow and left wrist remains normal. Fist and grip production and fine and gross manipulation of both hands are normal to 5 over 5 bilaterally.

Dr. Costino concluded that "it is my impression that the patient sustained a strain/sprain of the left shoulder ... as a result of the motor vehicle accident dated June 4, 1990." The "[e]xamination today reveals complete mobility in ... all four extremities. Examination further reveals no evidence of significant orthopedic or neurological deficit." Dr. Costino expressed the opinion that "this case represents zero percent (0%) of total in [sic] partial permanent disability."

## III

### A

Coordinated Transport argues that diminution in range-of-motion, accompanied by subjective complaints of pain and discomfort, does not satisfy the statutory mandate that a claimant produce "demonstrable objective medical evidence" to prove a partial-permanent disability.

Although the record does not make clear the basis of the decision by the Judge of Compensation, *see Allen v. Ebon Services Int'l. Inc.*, 237 *N.J. Super.* 132, 135, 567 *A.*2d 228 (App.Div.1989); *Lister v. J.B. Eurell Co.*, 234 *N.J.Super.* 64, 74, 560 *A.*2d 89

(App.Div.1989), he apparently relied on the range-of-motion tests in Dr. Fleischman's report. The Judge of Compensation inferred that because Dr. Costino noted that petitioner could perform certain motions relating to his back "without significant restriction," but did not make a similar notation with respect to petitioner's shoulder, Dr. Costino also found "objective evidence of . . . disability" to petitioner's left shoulder.

The judge failed to articulate any basis for his conclusion that Dr. Fleischman's report contained objective evidence of disability to the left shoulder. Similarly, without any specificity, the judge simply said he considered "the testimony of the petitioner concerning his problems involving his left shoulder" in determining the existence of permanent disability.

### B

■  The statute that defines the elements of proof of a claim for partial-permanent disability is *N.J.S.A.* 34:15–36. It provides:

"Disability permanent in quality and partial in character" means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's working ability. . . . Injuries such as minor lacerations, minor contusions, minor sprains, and scars which do not constitute significant permanent disfigurement, and occupational disease of a minor nature such as mild dermatitis and mild bronchitis shall not constitute permanent disability within the meaning of this definition.

[*N.J.S.A.* 34:15-36.]

This provision became effective January 10, 1980, as part of extensive amendments to the Workers' Compensation Act. *L.* 1979, *c.* 283, § 12. *N.J.S.A.* 34:15–36 "for the first time set forth a statutory definition of partial permanent disability." *Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 111, 469 *A.*2d 22 (1984). One of "the statute's primary goals [was] to eliminate awards for minor partial disabilities." *Id.* at 114, 469 *A.*2d 22.

■  *Perez v. Pantasote, supra,* addressed the evidentiary basis necessary to satisfy the statutory definition of partial-permanent

disability. There we held that under *N.J.S.A.* 34:15–36, a petitioner seeking to prove partial-permanent disability must satisfy a two-prong test. *Id.* at 116, 469 *A.*2d 22. First, petitioner must make a "satisfactory showing of demonstrable objective medical evidence of a functional restriction of the body, its members or organs." *Ibid.* This showing may not "rest upon petitioner's subjective complaints" alone. *Ibid.* Second, "he must establish either that he has suffered a lessening to a material degree of his working ability or that his disability otherwise is significant and not simply the result of a minor injury." *Id.* at 118, 469 *A.*2d 22. Petitioner bears the burden of proof on both prongs of the test. *Ibid.* (citations omitted).

■■ The legislative history of *N.J.S.A.* 34:15–36 "implies that the distinction between objective and subjective contemplated by the Legislature is ... between independent professional analysis and the bare statement of the patient." *Saunderlin v. E.I. DuPont Co.*, 102 *N.J.* 402, 411–12, 508 *A.*2d 1095 (1986). The purpose for requiring "demonstrable objective medical evidence"

is to interpose a professional medical judgment between the subjective statement of the petitioner and the award of disability benefits. Presumably, evidence *exceeding* the subjective statement does not mean evidence *excluding* that statement. After all, any medical examination, whether physical or psychiatric, must begin with the subjective statement of the patient (unless he or she is unconscious). To what extent and in what manner the professional analysis must go beyond that statement in order to constitute demonstrable objective medical evidence appropriately depends upon the nature of the disability.

In most physical disability claims, medical analysis quickly goes beyond the subjective statement by the patient to clinical and laboratory tests by the physician. The medical diagnosis usually looks for, and is in terms of, observable, measurable, physical manifestations.

[*Id.* at 412, 508 *A.*2d 1095.]

The required physical manifestations that are observable independently of a petitioner's statement of complaints are frequently non-existent in cases involving soft-tissue injuries. Although more serious soft-tissue injuries, those defined as not being minor, may not be apparent in x-rays, physical manifestations of such injuries are nonetheless required and may be found in the form of inflammation, swelling, discoloration, spasm or the like. Consequently, a

subjective complaint of pain or discomfort without accompanying "demonstrable objective medical evidence," *N.J.S.A.* 34:15–36, does not satisfy a petitioner's burden of proving the existence of partial-permanent disability.

■ The scope of professional analysis required beyond the subjective complaints depends on the nature of the disability or impairment. *Saunderlin, supra,* 102 *N.J.* at 412, 508 *A.*2d 1095; *Perez v. Monmouth Cable Vision,* 278 *N.J.Super.* 275, 285, 650 *A.*2d 1025 (App.Div.1994), *certif. denied,* 140 *N.J.* 277, 658 *A.*2d 301 (1995). The closer the disability or impairment approaches a "minor injury," the more extensive the professional analysis must be.

■ We are persuaded that ordinarily a diminution in range-of-motion *alone* will not satisfy the "demonstrable objective medical evidence" standard required to support an award of partial-permanent disability. Most range-of-motion test results are subjective responses of the patient, especially when there is no physical manifestation that is observable by a medical expert. Although a doctor is permitted to consider a petitioner's subjective complaints, the doctor must also present either clinical or laboratory findings of "observable, measurable, physical manifestations" of injury to satisfy the "demonstrable objective medical evidence" standard. *Saunderlin, supra,* 102 *N.J.* at 412, 508 *A.*2d 1095; *see Perez v. Monmouth Cable Vision, supra,* 278 *N.J.Super.* at 284, 650 *A.*2d 1025. Any diminution in the range-of-motion in this case may be considered only as any other subjective complaint.

## IV

We regard as unnecessary Coordinated Transport's argument that we should apply the holding in *Oswin v. Shaw, supra,* 129 *N.J.* at 320, 609 *A.*2d 415, to workers' compensation cases. There we held that to satisfy "the objective medical evidence" standard for verbal threshold requirements in automobile tort liability cases, range-of-motion tests are ordinarily insufficient. *Ibid.*

*Oswin* involved an entirely different statute, and we find it unwise to tack on to workers' compensation law our interpretation of statutory requirements governing automobile insurance law. *See Rakip v. Madison Ave. Food Town*, 272 *N.J.Super.* 590, 596, 640 *A.*2d 1152 (App.Div.1994) (refusing to apply *Oswin* to workers' compensation). We disapprove of the strict application of *Oswin* to workers' compensation cases articulated in *Viera v. Level Line, Inc.*, 276 *N.J.Super.* 646, 657, 648 *A.*2d 748 (App.Div.1994). Judges of Compensation have expertise in assessing the nature and extent of the disability. *Lewicki v. New Jersey Art Foundry*, 88 *N.J.* 75, 89, 438 *A.*2d 544 (1981).

We acknowledge, however, that *Oswin* is on parallel track with *Saunderlin* and *Perez v. Pantasote*, as well as our holding today. Furthermore, in a case involving surgical excision of a neuroma that required nerve reattachment, the Appellate Division already has permitted range-of-motion tests to be considered in conjunction with "demonstrable objective medical evidence" in determining whether the requirements of *N.J.S.A.* 34:15-36 were satisfied. *Perez v. Monmouth Cable Vision, supra*, 278 *N.J.Super.* at 284–85, 650 *A.*2d 1025.

Our careful study of the record in this case prevents us from applying the foregoing principles and adjudicating whether petitioner sustained his burden of proof. As we said earlier, *supra* at (slip op. at 3 and 7), the Judge of Compensation failed to make necessary factual findings to support his ultimate conclusion that the statutory definition of partial-permanent disability has been met. A decision without proper factual findings and a reasoned explanation of the ultimate result "does not satisfy the requirements of the adjudicatory process." *Lister, supra*, 234 *N.J.Super.* at 73, 560 *A.*2d 89; *see Perez v. Pantasote, supra*, 95 *N.J.* at 118–19, 469 *A.*2d 22; *New Jersey Bell Tel. Co. v. Communications Workers of Am.*, 5 *N.J.* 354, 375, 75 *A.*2d 721 (1950); *see also Lewicki v. New Jersey Art Foundry, supra*, 88 *N.J.* at 89–90, 438 *A.*2d 544 (requiring Judge of Compensation to make factual findings and articulate reasons for the determinations made). The

Appellate Division concluded that the diminution in range-of-motion reported by Dr. Fleischman and petitioner's subjective complaints satisfied the "demonstrable objective medical evidence" standard. Because neither the Judge of Compensation nor the Appellate Division specified what the "demonstrable objective medical evidence" was, we reject the decision.

V

Coordinated Transport argues further that even if a permanent disability to the left shoulder was established by "demonstrable objective medical evidence," the injury was minor and neither materially affects petitioner's working ability nor substantially interferes with his ordinary pursuits of life. The Judge of Compensation did not address the statutory proscription that injuries such as minor contusions and minor sprains "shall not constitute permanent disability." *N.J.S.A.* 34:15–36. In other words, he failed to determine whether petitioner met the second prong of the *Perez v. Pantasote, supra,* 95 *N.J.* at 118, 469 *A.*2d 22, two-part test. The Appellate Division addressed this issue by simply concluding that "a minor disability is still compensable provided the petitioner sustains the burden of proving that his disability is at least two and one-half percent of partial total."

Respondent argues that a numerical threshold for compensability is arbitrary and will "not only facilitate erosion of the statutory [*N.J.S.A.* 34:15–36] objective, it [will] as a practical matter vitiate all efficacy of the statute whatsoever." We agree.

The language of *N.J.S.A.* 34:15–36 does not establish a threshold percentage of disability in defining minor injuries. "In the absence of specific guidance, our task is to discern the intent of the Legislature not only from the terms of the [Workers' Compensation] Act, but also from its structure, history and purpose." *Fiore v. Consolidated Freightways,* 140 *N.J.* 452, 470, 659 *A.*2d 436, 445 (1995) (citing *Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994)).

Because the Act does not expressly include a numerical threshold, it is reasonable to impute to the Legislature the intent not to allow a numerical threshold for defining compensability. Moreover, a numerical threshold may be counter-productive to the aims of *N.J.S.A.* 34:15–36. If established, it would increase the probability that the percentage of disability would be raised just high enough to exceed the threshold, thereby making more, not fewer, minor injuries compensable. That would aggravate, not alleviate the " 'permanent partial problem' [with minor injuries] that the Legislature attempted to solve through the [1980] amendments." *Saunderlin, supra,* 102 *N.J.* at 418, 508 *A.*2d 1095.

The judgment of the Appellate Division is reversed. The matter is remanded to the Judge of Compensation to make detailed factual findings based on the present record and redetermine the extent, if any, of disability to the left shoulder consistent with this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.