**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3181-16T1

PATRICK MALONE,

    Petitioner-Respondent,

v.

PENNSAUKEN BOARD
OF EDUCATION,

    Respondent-Appellant.

_____

Argued February 5, 2018 — Decided June 29, 2018

Before Judges O'Connor and DeAlmeida.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2013-16505.

Adam M. Segal argued the cause for appellant (Capehart & Scatchard, PA, attorneys; John H. Geaney, of counsel; Adam M. Segal, on the brief).

Albert J. Talone argued the cause for respondent.

PER CURIAM

    Appellant Pennsauken Board of Education (Board) appeals

from a Division of Worker's Compensation order awarding benefits

to petitioner, Patrick Malone.  Specifically, the Worker's Compensation judge found a disabling condition Malone developed in his knees was in part causally related to the duties he performed while in the Board's employ.  The Board contends the judge's conclusions were: (1) not supported by objective medical evidence, and (2) based upon an inadmissible net opinion given by Malone's medical expert witness.  For the reasons that follow, we reverse.

I

The pertinent evidence adduced at the hearing was as follows.  In 2007, Malone commenced working for the Board as a custodian in one of the schools in the school district.  His duties included sweeping the floors and stairwells, taking out the trash, cleaning the blackboards and desktops, getting gum and shoe marks off the floors, going up ladders when necessary to change a light bulb or to replace a stained ceiling tile, and cleaning the toilets, including the floors and walls around them.  During the summer break, he had to remove the furniture and filing cabinets from each classroom and put them into the hallway so the classrooms could be cleaned.

Malone indicated the job entailed "a lot" of kneeling, stooping, and squatting, but he did not quantify how frequently he put himself into any one of these positions.  Before he

2

worked for the Board, Malone worked for an entity from 1999 to 2007 for which he performed essentially the same custodial tasks. Before that, he had held positions that also entailed physical labor.

In 2012, the then fifty-five year old Malone began to experience constant pain in both knees. It is not disputed the pain was caused by osteoarthritis in his knees, a condition that existed before he started to work for the Board, but did not become symptomatic until 2012. Malone stopped working as a result of the pain in his knees in November 2012 and did not return to work until November 2013.

When conservative treatment failed, Malone had a right knee replacement in February 2012 and a left knee replacement in August 2012. He testified he still has constant pain in his knees, which is aggravated by engaging in physical activities.

Malone called Ralph Cataldo, D.O., as his medical expert witness. Cataldo is an anesthesiologist, with a subspecialty in pain management. Before he testified, Cataldo reviewed the operative reports pertaining to each knee replacement, an office note authored by the orthopedist who performed the replacements, and a transcript of Malone's trial testimony. Cataldo also examined Malone. The only objective findings Cataldo discovered

A-3181-16T1

on physical examination were the surgical scars that resulted from the knee replacements and some swelling about both knees.

As a result of reviewing the aforementioned documents and examining Malone, Cataldo found Malone's condition was the result of an aggravation of the osteoarthritis in each knee, and that the aggravation was caused by Malone performing his work duties for the Board. Cataldo reasoned that, because Malone's osteoarthritis was asymptomatic when he began to work for the Board, the tasks Malone performed for the Board had to have aggravated the osteoarthritis, causing this condition to become symptomatic.

Cataldo further stated that as a result of such "occupational exposure," Malone eventually needed the replacement of both knees and still remains impaired. Specifically, Malone's condition will restrict him from bending, kneeling, stooping, squatting, and climbing stairs. Cataldo also claimed Malone has a seventy percent permanent disability in each leg and that such disability was the result of working for the Board from 2007 to 2012.

Cataldo also opined that, between November 2012 and November 2013, Malone was unable to perform the essential functions of his job and so was temporarily totally disabled

4

during this time period.  Cataldo conceded that osteoarthritis can occur as part of the aging process.

The Board called Francis Meetere, M.D., who practices family and occupational medicine, as its medical expert witness. Like Cataldo, Meetere found Malone had osteoarthritis of the knees by the time he began to work for the Board.  Meetere testified such condition is a chronic, progressive, degenerative joint condition caused by the natural aging process.  In his opinion, the job tasks Malone performed for the Board did not aggravate the osteoarthritis in Malone's knees and did not lead to the need for the total knee replacements.

The Workers' Compensation judge accepted Cataldo's opinion and rejected Meetere's.  Although defendant argued Cataldo's findings were not based upon objective medical evidence, the judge found "the results of petitioner's physical examination resulted in both objective and subjective findings.  The Court found this testimony to be credible."

Defendant also argued Cataldo's opinion was net.  The court rejected this argument, finding it was not unreasonable for Cataldo to conclude that one performing "the job duties of a school custodian, someone who's [sic] job duties entail a substantial amount of lifting, bending, squatting and kneeling

would suffer from an aggravation or exacerbation of pre-existing osteoarthritis."

The judge also found Malone credible, and ultimately concluded:

> [w]hen called upon to make findings neither the Court or medical experts should ignore commonly known facts to wit: an extensive amount of bending, squatting, and lifting can cause increased discomfort in ones [sic] knees. The Court finds the testimony of Dr. Cataldo satisfies the burden of establishing a causal connection with probability that Petitioner's injuries were aggravated by his occupational duties.
>
> In the instant case, I find that the Petitioner has satisfied his burden of demonstrating that his injuries were contributed to by conditions arising out of the course and scope of his employment. I find that the injuries sustained by the petitioner are due in a material degree to causes and conditions which are characteristic of a school custodian. The Court finds that the nightly occupational duties of mopping, sweeping, bending, and cleaning described by the petitioner establishes probable, circumstantial and presumptive proof that his pre-existing osteoarthritis was aggravated and exacerbated by his employment.

The judge awarded Malone fifty-five percent permanent partial disability of both legs, due to an aggravation of preexisting osteoarthritis and the total knee replacements, but gave the Board a twenty percent credit for Malone's pre-existing condition. She also awarded Malone temporary disability

benefits for the approximately one-year period he was out of work because of his knees. The net compensation amount awarded to Malone was $109,214.33.

## II

On appeal, the Board asserts the following for our consideration:

> POINT I: THERE WAS NO REASONABLE BASIS TO SUPPORT THE JUDGE OF COMPENSATION'S FINDING THAT PETITIONER'S KNEE CONDITION WAS CAUSALLY RELATED TO HIS OCCUPATIONAL EXPOSURE. THE ONLY EVIDENCE PRESENTED IN SUPPORT OF THE THEORY WAS THE TESTIMONY OF DR. CATALDO, WHICH SHOULD HAVE BEEN DISREGARDED BY THE TRIAL JUDGE AS A MATTER OF LAW.
>
> A. DR. CATALDO RELIED ON NO OBJECTIVE MEDICAL OR SCIENTIFIC EVIDENCE TO SUPPORT HIS OPINION REGARDING CAUSATION, AND THUS THE TRIAL COURT SHOULD HAVE REJECTED HIS CONCLUSION.
>
> B. DR. CATALDO'S OPINION AMOUNTS TO A "NET OPINION" AND SHOULD HAVE BEEN DISREGARDED BY THE TRIAL COURT AS A MATTER OF LAW.

We are mindful of our standard of review. Our function is to determine "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599

(1965) (citation omitted). However, compensation judges' findings "must be supported by articulated reasons grounded in the evidence." Lewicki v. New Jersey Art Foundry, 88 N.J. 75, 89-90 (1981).

This court need not uphold findings that are so "manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). In such case, de novo review is appropriate if the compensation judge's evaluation of the underlying facts and inferences drawn therefrom "leave [this court] with the definite conviction that the [compensation] judge went so wide of the mark that a mistake must have been made." Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J. Super. 604, 609 (App. Div. 1990) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., 233 N.J. Super. 65 (App. Div. 1989)).

The burden is on a petitioner to prove his case by a preponderance of the evidence. Rivers v. Am. Radiator Standard Sanitary Corp., 24 N.J. Misc. 223, 227 (1946). A petitioner seeking worker's compensation benefits generally must prove both legal and medical causation when those issues are contested. Lindquist, 175 N.J. at 259. Medical causation means the

disability is a consequence of work exposure. Ibid. Legal causation requires proof the disability is work connected. Kasper v. Board of Trustees of Teachers' Pension and Annuity Fund, 164 N.J. 564, 591 (2000) (Coleman, J., concurring).

A subjective complaint of pain or discomfort by the petitioner is not enough to satisfy the burden of proving the existence of a work-related disability. Colon v. Coordinated Transp., 141 N.J. 1, 9-10 (1995). A claimant must satisfy the general principle of workers' compensation law requiring that disability be established by appropriate objective evidence, and that disability cannot be based solely upon a claimant's subjective complaints of a present level of incapacity. Perez v. Pantasote, Inc., 95 N.J. 105, 114-16 (1984). Therefore, compensation cannot be justified when a medical witness merely asserts a "reasonably probable contributory work connection," if there is no medical support for such opinion. Laffey v. Jersey City, 289 N.J. Super. 292, 306 (App. Div. 1996).

Here, there is no dispute Malone had osteoarthritis before he began to work for the Board and that such condition began to manifest symptoms in 2012 and ultimately necessitated bilateral knee replacements. However, the judge concluded the job duties Malone performed for the Board exacerbated his preexisting osteoarthritis and caused his knees to become symptomatic. In

our view, what is lacking is any medical evidence, objective or otherwise, showing the performance of Malone's job duties aggravated this preexisting condition and did so to the point where Malone required knee replacements.

First, there was no evidence concerning how often and to what extent Malone engaged in the various physical activities about which he testified to perform his job duties. Simply to identify the tasks he performed and that they entailed "a lot" of kneeling, stooping, and squatting fails to impart any reliable information about how arduous and physically demanding Malone's job actually was.

The absence of any definitive evidence about how strenuous Malone's job tasks actually were is significant, because Cataldo relied upon Malone's testimony and the objective evidence to arrive at his conclusion the tasks Malone performed for the Board aggravated the preexisting osteoarthritis and caused this condition to become symptomatic. There is in fact no evidence about the amount of physical exertion Malone actually expended while working for the Board.

Second, the only objective medical evidence Cataldo identified were the surgical scar and the swelling he found around each knee. Neither form of evidence indicates — and

Cataldo did not explain — how Malone's job duties aggravated the underlying osteoarthritic condition.

In the final analysis, the crux of Cataldo's opinion is that, because Malone's knees were asymptomatic before but became symptomatic after he began working for the Board, then his knee condition must have been caused by the tasks he performed for the Board. However, the record is devoid of the necessary objective medical evidence to establish a causal connection between Malone's bilateral knee condition and his work duties. Because it was not supported by substantial credible evidence in the record, we are compelled to reverse the judge of compensation's decision. See Taylor, 158 N.J. at 657.

In light of our disposition, we need not reach the Board's remaining contentions. See R. 2:11-3(e)(1)(E).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION