788 A.2d 932 (2001)
347 N.J. Super. 112
Edner JACQUES, Plaintiff,
v.
Hilda KINSEY, Defendant.
Superior Court of New Jersey, Law Division.
Decided October 5, 2001.
*933 Thomas Ryan for plaintiff (Lutz, Shafranski, Gorman and Mahoney, attorneys).
Robert C. Kane, Jr. for defendant (Maloof, Lebowitz, Connahan and Oleske, attorneys).
CHAMBERS, P.J.C.
In this motor vehicle accident case, defendant has moved for summary judgment contending that plaintiff has failed to meet the verbal threshold under the new Automobile Insurance Cost Reduction Act N.J.S.A. 39:6A-8 (hereinafter AICRA). Plaintiff claims that his neck and back sprain constitutes a permanent injury under AICRA and meets the verbal threshold. Resolution of this motion turns on the requirement under AICRA that in order to pass the verbal threshold plaintiff's claim must be supported by a doctor's certification which relies on objective clinical evidence. Here plaintiff's doctor's certification does make a finding of permanency, but it sets forth as the objective *934 clinical evidence muscle spasms with some loss of range of motion observed up to five months after the accident.
This court finds that, where the plaintiff claims a permanent injury, the objective clinical evidence must support a finding of permanent injury. The muscle spasms documented up to five months after the accident, accompanied by some loss of range of motion, are temporary symptoms and are not sufficient to support a finding of permanent injury. Accordingly, defendant's motion of summary judgment for failure to meet the verbal threshold is granted.

* * * * * *
The facts that give rise to this dispute are straightforward. Plaintiff, was involved in a motor vehicle accident with defendant on December 4, 1999. His injuries consisted of neck and back sprain. Plaintiff was taken to the emergency room where he was examined and released. On January 10, 2000, a month after the accident, he went to a chiropractor, Dr. Prem K. Rangala, for treatment. Plaintiff received treatment for a period of four months, from January 10, 2000 to May 8, 2000. Treatment for the injuries consisted of Advil and physical therapy. On May 8, 2000 plaintiff was discharged from treatment with the recommendation that he continue to exercise.
In his certification dated June 30, 2000, Dr. Rangala states that, within a reasonable degree of medical probability, plaintiff has sustained a permanent injury to his cervical and lumbosacral spine. He further finds that plaintiff's cervical and lumbosacral spine have not healed to function normally nor will they heal with further treatment. The Doctor's final diagnosis is cervical and lumbosacral sprain. The certification indicates that the diagnosis is based on the X-rays of the cervical and lumbosacral spine (which were negative for fracture), muscle spasms in the neck and back (the spasms were described as "moderate" at the initial visit and "mild" by the time of the last visit) with generalized tenderness, and loss of range of motion in the cervical and lumbosacral spine.

* * * * * *
All parties agree that plaintiff's claim is governed by the verbal threshold under AICRA, N.J.S.A. 39:6A-8, enacted in 1998. Under that statute, in order to have a claim for non-economic loss against the defendant tortfeasor, plaintiff's bodily injuries must fall within one of the following categories: "death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of fetus; or a permanent injury within a reasonable degree of medical probability other than scarring or disfigurement." N.J.S.A. 39:6A-8(a). The only category possibly applicable in this case is the last one, namely a permanent injury.
Plaintiff's claim for non-economic loss will fail unless he can show within a "reasonable degree of medical probability" a permanent injury. Ibid. The statute clarifies what is meant by a "permanent injury," stating: "(a)n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." Ibid.
In addition, under the statute, plaintiff must file a timely physician's certification which states that plaintiff has sustained one of the injuries described in the statute. Ibid. The certification must rely on objective clinical evidence. The statute requires that:
The certification shall be based on and refer to objective clinical evidence, which may include medical testing, except that any such testing shall be performed in *935 accordance with medical protocols pursuant to subsection a. of section 4 of P.L.1972, c. 70 (C.39:6A-4) and the use of valid diagnostic tests administered in accordance with section 12 of P.L.1998, c. 21 (C.39:6A-4.7). Such testing may not be experimental in nature or dependent entirely upon subjective patient response.
[Ibid.]
To summarize, in order to pass the verbal threshold for a permanent injury, plaintiff must establish, within a reasonable degree of medical probability and through a physician's certification, four factors: (1) qualifying injuryplaintiff has a body part or organ which no longer functions normally;[1] (2) permanencythe body part or organ will neither heal nor function normally in the future even with further medical treatment; (3)causationthe accident caused the injury to the body part or organ; and (4) objective clinical evidencethe physician must rely on objective clinical evidence to support these findings.

* * * * * *
This issue comes to the court by way of defendant's motion for summary judgment. The summary judgment model is appropriately used in verbal threshold determinations. Oswin v. Shaw, 129 N.J. 290, 313, 609 A.2d 415 (1992). In deciding this motion, this court then must look at the competent evidence in the light most favorable to plaintiff and decide whether a rational fact finder could hold in favor of plaintiff. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995).

OBJECTIVE CLINICAL EVIDENCE
In this case, a rational fact finder must be able to hold that each of the four factors listed above, namely, (1) qualifying injury, (2) permanency, (3) causation, and (4) objective clinical evidence, are met in order for plaintiff to pass the verbal threshold by proving a permanent injury. If plaintiff fails to establish any one of the four criteria, the claim is defeated.
This motion is most clearly resolved by focusing on the fourth criteria, namely the requirement that there be objective clinical evidence to support the doctor's certification. In the analysis of the fourth criteria, this court accepts everything in Dr. Rangala's report as true. Dr. Rangala's diagnosis is cervical and lumbosacral strain. He expresses the opinion that within a reasonable degree of medical probability plaintiff's cervical spine and lumbosacral spine have not healed to function normally nor will they heal to function normally with further medical treatment. He goes on to state that these injuries are permanent and caused by the accident.
Under the statute, all of these findings must be based on "objective clinical evidence." N.J.S.A. 39:6A-8. The statute provides that objective clinical evidence includes medical testing and valid diagnostic tests conducted in accordance with the approved protocols provided pursuant to the statute. Ibid. The statute expressly states that experimental testing and testing that is dependent entirely on plaintiff's subjective response do not constitute objective clinical evidence. Ibid. In her conditional veto message of April 27, 1998, Governor Whitman states: "The proposed standard is explicit that the medical conclusion may *936 not be based on subjective accounts of pain." Governor's Statement, p. 4. Accordingly, Dr. Rangala's findings must be based on objective clinical evidence and not subjective complaints of pain or tests based solely on subjective findings.
The basis of Dr. Rangala's findings is set forth in his June 30, 2000 certification as follows:
The diagnosis was made as a result of my examination and observation and the following diagnostic tests: X-rays of the cervical and lumbosacral spines. Pelvic spasm was noted in both the cervical and lumbosacral spine with generalized tenderness. Cervical flexion is 20 degrees, extension 5 degrees, lateral bending 20 degrees to the left and 15 degrees to the right, and rotation 50 degrees. Lumbosacral flexion is 60 degrees, extension 5 degrees, lateral bending 15 degrees to the left and 20 degrees to the right.
He thus identifies three items, the X-rays, muscle spasm, and loss of range of motion, as the clinical basis for his findings. Each of these items will be addressed below.
While X-rays are certainly objective and not based on a patient's subjective complaints, the X-rays in this case were negative, that is, there were no findings of any injury. Thus, the X-rays were only helpful in the sense that they eliminated certain injuries such as a fracture, but they are not helpful to show that any injury was sustained.
The loss of range of motion findings, without more, are not based on objective evidence, but depend on the patient's response. "Because most range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation." Oswin v. Shaw, supra, 129 N.J. at 320, 609 A.2d 415. Due to the inherent subjective nature of most loss of range of motion tests, findings of limitation of range of motion alone have not presented sufficient credible medical proofs to pass the verbal threshold. Polk v. Daconceicao, 268 N.J.Super. 568, 573, 634 A.2d 135 (App. Div.1993). As a result, these are subjective tests, which do not meet the statutory requirement for objective clinical evidence.
The findings of muscle spasms are objective findings. Oswin v. Shaw, supra, 129 N.J. at 320, 609 A.2d 415. A muscle spasm has been defined as a "sudden, violent, involuntary contraction of a muscle or a group of muscles, attended by pain and interference with function, producing involuntary movement and distortion." Owens v. Kessler, 272 N.J.Super. 225, 231-32 n. 2, 639 A.2d 738 (App.Div.1994) (quoting Dorland's Illustrated Medical Dictionary 1272 (23d ed.1957)). A muscle spasm is considered objective because it is involuntary, something which the patient cannot control. A finding of muscle spasm at a medical examination does not depend on the patient's subjective complaints. Accordingly, in identifying muscle spasms the plaintiff's doctor has made an objective clinical finding.
However, the fact that somewhere in the course of treatment plaintiff had an objective finding of some injury is not necessarily sufficient. As the New Jersey Supreme Court noted under the prior law, while the finding of a muscle spasm is objective, it alone may not be sufficient to establish a causal connection to the statutory criteria and pass the verbal threshold. Whitaker v. DeVilla, 147 N.J. 341, 358, 687 A.2d 738 (1997). Similarly, AICRA requires that the objective clinical evidence support the statutory criteria; the statute expressly provides that the doctor's certification, confirming that *937 the plaintiff's injury meets the verbal threshold, "shall be based on and refer to objective clinical evidence." N.J.S.A. 39:6A-8. The objective clinical evidence, therefore, must support a finding that plaintiff has a body part or organ which does not function normally and that the condition is permanent.
The only objective clinical evidence plaintiff has to support a finding that the injuries are permanent are the muscle spasms documented for four of the first five months after the accident. A muscle spasm is not generally a permanent condition, nor is it by its nature indicative of a permanent condition. Rather, it is generally a temporary problem, like a bruise or swelling, although perhaps there may be situations where, due to their persistence, swelling, bruising or muscle spasm may be indicative of permanent problems. However, as demonstrated below, muscle spasms for a period of four or five months, coupled with some loss of range of motion, are not sufficient objective, clinical evidence to support the doctor's findings of a permanent injury to vault this claim past the verbal threshold.
A look at the verbal threshold case law on muscle spasms under the immediately preceding statute is instructive on this point. The verbal threshold statute immediately preceding the current one, L.1988, c. 119, § 6, sets forth nine categories of injuries which would pass the verbal threshold as follows:
death; dismemberment; significant disfigurement; fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body function or system; or medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.

[L.1998, c. 119, § 6]
Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992) is the leading case setting forth the standard that must be met in order for an injury to pass the verbal threshold under prior law, L.1988, c. 119, § 6. To pass the verbal threshold, the plaintiff must have proffered "objective credible medical evidence" to support a finding of a serious injury which has had a "serious impact on the plaintiff and her life." Id. at 318-19, 609 A.2d 415.
While AICRA and the prior law differ in a number of respects concerning the standards that must be met in order to pass the verbal threshold, both require that plaintiff's claim of injury be supported by objective medical evidence. Under the prior law, case law developed concerning muscle spasms and whether they are objective medical evidence of a temporary or permanent injury. Although caution must be used when considering these cases since the statutory standards to pass the verbal threshold have changed, a look at that case law is helpful since what is considered objective medical evidence of an injury remains unchanged.
In looking at the prior case law, it is difficult to reach precise conclusions because the cases are so fact specific. However, some valid generalizations can be made. Muscle spasms which are documented for a period of a few months are not sufficient objective proof of an injury sufficient to pass the verbal threshold under the prior statute. Oswin v. Shaw, supra (plaintiff with muscle spasms and loss of range of motion documented in six months of treatment did not pass the verbal *938 threshold); Montemayor v. Signorelli, 339 N.J.Super. 482, 486-88, 772 A.2d 940 (App.Div.2001) (muscle spasms that dissipated after four months not sufficient objective credible evidence to pass the verbal threshold.); Cureton v. Eley, 294 N.J.Super. 321, 328, 683 A.2d 248 (Law Div.1996) (spasms even if they lasted four months would not be sufficient to meet the verbal threshold); Guy v. Petty, 275 N.J.Super. 536, 555, 646 A.2d 546 (Law Div.1993) (intermittent muscle spasm for three months following the accident did not pass the verbal threshold). But see McClelland v. Tucker, 273 N.J.Super. 410, 413-16, 642 A.2d 409 (App.Div.1994) (muscle spasm documented for three months, flattening of the cervical curve, an abnormal thermogram, plus loss of range of motion provided sufficient objective evidence to permit the case to be submitted to a jury); Cineas v. Mammone, 270 N.J.Super. 200, 636 A.2d 1071 (App.Div.1994) (spasms apparently documented eight months post accident, coupled with loss of range of motion verified by physical observation were sufficient objective evidence to defeat defendant's verbal threshold motion).
Under prior law, a line of cases developed holding that muscle spasms persistent for an extended period of time and unabated constituted sufficient objective medical evidence to pass the verbal threshold. See, e.g., Cavanaugh v. Morris, 273 N.J.Super. 38, 40-41, 640 A.2d 1192 (App. Div.1994) (spasm continuing for a period more than a year met Oswin's objective medical evidence requirement); Owens v. Kessler, supra (spasms present three years after the accident and twenty-six months after treatment ended present sufficient objective evidence to defeat defendant's verbal threshold motion); but see, Phillips v. Phillips, 267 N.J.Super. 305, 631 A.2d 564 (App.Div.1993) (spasms present up to nineteen months post accident but with full range of motion upon discharge was not sufficient objective evidence to meet the verbal threshold). Carmichael v. Bryan, 310 N.J.Super. 34, 51, 707 A.2d 1357 (App.Div.1998) (spasms documented four times over fifteen months were not persistent and therefore did not provide sufficient credible evidence to pass the verbal threshold); Whitaker v. DeVilla, 147 N.J. 341, 358, 687 A.2d 738 (1997) (muscle spasms documented sixteen months after the accident were not sufficiently connected to any of the statutory classifications to pass the verbal threshold).
Two cases most directly addressing the question of when a muscle spasm becomes evidence of a permanent injury (as opposed to a temporary injury) are Oswin v. Shaw, supra and Owens v. Kessler, supra. In the Oswin case, the plaintiff received only six months of treatment for a neck injury. Her objective medical evidence consisted of spasms, some loss of range of motion and X-rays showed "foraminal encroachment" at two disc levels. The Court agreed with the lower courts decisions that plaintiff had not passed the verbal threshold. In doing so, it noted: "[a] mere six months of treatment does not demonstrate permanence of disability." Oswin v. Shaw, supra, 129 N.J. at 320, 609 A.2d 415 (1992). Based on this language in the Oswin case, it would appear that six months of spasms is not long enough to establish permanency. Indeed, based on the holding in Oswin, the plaintiff in this case would not have met the verbal threshold under the prior law.
The case of Owens v. Kessler, supra, 272 N.J.Super. 225, 639 A.2d 738 (App.Div. 1994) discusses when muscle spasm are considered evidence of a permanent injury. The court found that muscle spasms which are temporary, that is, muscle spasms which are present during treatment and then dissipate, are not, by themselves, evidence *939 of a permanent injury. "The absence of spasm after treatment is obvious evidence that any claim of permanency based solely upon the existence of spasm will not withstand summary judgment." Id. at 232, 639 A.2d 738. Muscle spasms which are persistent and which have lasted for a period in excess of two years and remain unabated could be considered sufficient objective evidence to enable the claim to survive a motion for summary judgment. In so holding, the court wrote:
Spasm that is still evident, as here, twenty-six months after cessation of active medical treatment, clearly constitutes prima facie objective evidence of permanent injury. At the very least, persistent existence of spasm raises a genuine issue of material fact sufficient to withstand summary judgment.

[Ibid.]
But see Whitaker v. DeVilla, 147 N.J. 341, 687 A.2d 738 (1997) (where a plaintiff with documented muscle spasms for over a year did not meet the verbal threshold under prior law).
In this case, plaintiff must provide objective clinical evidence to support a finding that his neck and back do not function normally and that the condition is permanent. The only objective credible clinical evidence plaintiff has are muscle spasms documented for a period of only four of the first five months after the accident. Plaintiff first saw Dr. Rangala on January 10, 2000, one month after the accident, and at that time the doctor found a moderate degree of spasm in the cervical and lumbosacral spine with significant decreased range of motion. At his last visit on May 8, 2000, four months later, when plaintiff was discharged from treatment, the Doctor noted some mild spasm in the cervical and lumbosacral spine and some loss of range of motion. The record reflects no further documentation of muscle spasms or any other treatment or objective medical evidence of a permanent injury.
As the above case law reflects, and indeed common sense tells us, muscle spasms for a mere four or five months are not evidence of a permanent injury, that plaintiff's spine will never again function normally. AICRA required that the doctor's findings of permanency "be based on and refer to objective clinical evidence." N.J.S.A. 39:6A-8. The doctor's certification must show a nexus between the permanency and the objective credible evidence. The objective credible evidence must support a finding of permanency. Muscle spasms for a few months are temporary They are not by themselves sufficient objective credible evidence to support a finding that the condition is permanent. Accordingly, Dr. Rangala's certification that plaintiff has a permanent injury is not supported by sufficient objective clinical evidence to satisfy the fourth criteria. Due to the lack of objective clinical medical evidence of a permanent injury, plaintiff's claim must fail.
This result is consistent with the overall goals of the verbal threshold legislation. While this decision need not be the occasion for an exhaustive review of the verbal threshold laws, as the preamble to AICRA recounts, in some form, New Jersey has had no fault legislation for over 26 years. N.J.S.A. 39:6A1.1. The system is designed to provide medical and wage loss benefits to people injured in automobile accidents regardless of who is at fault for the accident. Ibid. In order to offset the costs for those benefits, the right to sue for non-economic loss is limited in certain situations. Ibid.
The recent legislation, AICRA, was prompted by the continuing problem of high auto insurance premiums, over-utilization of medical treatment in order to gain standing to sue, and fraud. Ibid. The *940 language in Governor Whitman's conditional veto message describes the State's continuing struggle to put in place an affordable no fault auto insurance system, writing:
Automobile insurance costs too much in New Jersey. That simple, undisputed fact has led, over the past twenty-six years to numerous efforts to reform the system....
Nothing has worked. Affordability has been the unintended casualty, fraud the inevitable consequence of an unremitting war among special interests. Those who are supposed to serve the systeminsurance companies, attorneys, medical professionalshave manipulated it to their gain, and have deflected every effort to make the system work. The system has been complicated in order to accommodate competing interests, fairness has been lost in that complexity. Senate Bill No. 3 is our opportunity to end this cycle of frustration.

[Governor's Statement, p. 1]
As with the previous statutes, one way AICRA seeks to keep the cost of premiums down is by limiting the right of people injured in motor vehicle accidents to sue for non-economic injuries. The insured has the option of electing a no threshold (the unlimited right to sue for non-economic injury), or a verbal threshold (where the right to sue for non-economic loss is limited). N.J.S.A. 39:6A-8. With respect to the verbal threshold, the legislation's preamble states: "this legislation... provides for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent, including those for soft tissue injuries...." N.J.S.A. 39:6A-1.1.
AICRA has made a number of changes to the verbal threshold in order to tighten up the standards in accordance with the goals set forth above. Losses or injuries that are temporary no longer qualify; fractures must be displaced in order to qualify. Plaintiff's claim must be supported by a physician's certification based on objective clinical evidence. N.J.S.A. 39:6A-8.
Due to this history and legislative intent, the verbal threshold standard must not be read liberally to allow the threshold to be easily met. Rather, the verbal threshold must be viewed as an important barrier designed to keep insurance costs down. Insureds selecting the verbal threshold experience significant savings in insurance premiums because of the limitation on their right to sue for non-economic injury. Plaintiff's injuries in this case would not have met the threshold under prior law, and nothing in the legal history suggests an intent to ease rather than tighten the standard. Accordingly, the result reached here is in accordance with the purposes of AICRA.
For all of the reasons set forth above, this plaintiff has failed to meet the verbal threshold. The objective clinical evidence plaintiff has to support a finding of permanent injury consists of merely temporary symptoms, namely muscle spasms that improved from moderate to minor with some loss of range of motion. The muscle spasms were documented for a period of only five months after the accident. Muscle spasms for such a short time, even when in conjunction with some loss of range of motion, are not sufficient proofs to document a permanent injury to the spine. To hold otherwise would allow claims of permanency to be supported by only temporary symptoms and would permit claims which are not serious and which were barred by prior law, contrary to the purposes of AICRA. This case involves the very type of non-serious soft tissue injury that the Legislature sought to exclude *941 with the verbal threshold statute. Defendant's motion for summary judgment is granted.
NOTES
[1] This decision does not address the dispute on whether the injury must have a "serious impact." For the competing points of view see Gerald H. Baker, How Insurance Reform Affects No-Fault Cases, 155 N.J.L.J. 332, Jan. 25, 1999; Thomas P. Weidner & Michael J. Canavan, The "New" Verbal Threshold: But Is It Improved?, 24 Seton Hall Legis. J. 117 (1999).