Rocco **BRANCA,** et al., Plaintiff,

v.

James **MATTHEWS,** et al., Defendants.

Civ. No. 03–CV–01379 (SSB).

United States District Court, D. New Jersey.

April 28, 2004.

Michael N. Borish, Law Offices of Bernard M. Gross, P.C., Philadelphia, PA, for Plaintiff.

Daniel James Distasi, Green, Lundgren & Ryan, P.C., Cherry Hill, NJ, for Defendant James Matthews, III.

Louise Ann Watson, Styliades, Jackson & Dimeo, Marlton, NJ, for Defendant Deborah L. Smith.

## OPINION REGARDING MOTION FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

In this motor vehicle accident suit, Plaintiff Rocco Branca seeks recovery for non-economic losses as provided under the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. § 39:6A–8(a). This matter comes before the Court on Defendant James Matthews' motion for summary judgment. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendant moves for summary judgment arguing that Plaintiff's soft-tissue injuries are not serious enough to qualify for relief under AICRA's "Limitation on Lawsuit" option, which governs Plaintiff's automotive insurance policy. Plaintiff resists summary judgment, arguing that his soft-tissue injuries are not per se barred from coverage, leaving a genuine issue of material fact as to the permanent and serious nature of Plaintiff's injuries, and precluding a grant of summary judgment. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2002 Plaintiff Rocco Branca, (hereafter "Plaintiff," or "Branca") was involved in a motor vehicle accident at the intersection of Troth Road and Route 70 located in Evesham Township, New Jersey. (Def.'s Brief in Supp. of Mot. for S.J., Police Report at Exh. A). The accident occurred when Plaintiff's vehicle, which had been stopped in traffic, was suddenly struck by a vehicle operated by Defendant, Deborah Smith, (hereafter "Defendant," or "Smith"). Smith first collided with Defendant James Matthews, (hereafter "Defendant" or "Matthews") when he entered the intersection. The collision between Smith and Matthews forced Smith's vehicle into Branca's driver's side door.

Branca did not seek treatment at the hospital directly after the accident but was evaluated the following day by Dr. Milton Soiferman, D.O. (Def.'s Brief in Supp. of S.J. Mot., Soiferman's evaluation letter at Exh. B). During his medical evaluation, Plaintiff complained of "pains in his neck and shoulder areas and lower back areas." (*Id.*) Dr. Soiferman diagnosed plaintiff as suffering from strains and sprains of the trapezious, rhombiodeus, latissimus and of the cervical, dorsal, and lumbar spine, along with myofasciitis for which he prescribed "analgesics, muscle relaxers, anti-inflammatory medications, osteopathic manipulative therapy, myofacial soft tissue release techniques ... heat modalities, and an exercise program." (*Id.*). Branca continued treatment until January 27, 2003 when he was discharged from Dr. Soiferman's care. Dr. Soiferman concluded that discharge was appropriate because, although Plaintiff still suffered soreness and muscle spasm, Branca had "reached maximum medical benefit from ... care" and treatment was no longer necessary. (*Id.*) Prior to his discharge, Branca underwent a

computerized range of motion study of the cervical, thoracic, and lumbosacral spine, which established that he suffered a 6%, 4% and 7% loss of function respectively. (*Id.*).

On March 28, 2003 Plaintiff filed a complaint seeking damages in the amount of $150,000 for his injuries, which Plaintiff alleges are permanent and have prevented him from participating in his usual activities and carrying out his usual duties. (Pl.'s Complaint at ¶ 6). Defendant Matthews filed this motion for summary judgment on October 22, 2003.

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Fed.R.Civ.P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## III. DISCUSSION

Defendant James Matthews moves for summary judgment arguing that Plaintiff Rocco Branca's injuries are not serious enough to qualify for relief under the "Limitations on Lawsuit" provision provided in the New Jersey Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. § 39:6A–8(a). Defendant further argues that Plaintiff has failed to establish a causal nexus between the accident and Plaintiff's current injuries. Defendant specifically contends that Plaintiff's physician, in his certifying statement, failed to discuss Plaintiff's pre-accident physical condition or any existing injuries. Plaintiff, on the other hand, argues that the existence of genuine issues of material fact as to the seriousness and permanent nature of his injuries precludes a grant of summary judgment.

■ New Jersey's no-fault and verbal threshold statutory scheme has followed a tortured evolution in the State's efforts to reconcile the need for affordable insurance with the need to provide adequate compensation to tort victims, and deserves a brief recitation to provide context for this case. New Jersey enacted its first no-fault insurance statute, the New Jersey Automobile Reparation Reform Act, in 1972 with the goal of "compensating a larger class of citizens than the traditional tort-based system." *Oswin v. Shaw*, 129 N.J. 290, 295, 609 A.2d 415 (1992) (citations omitted). A no-fault insurance system is one in which "a person injured in an automobile accident is compensated for those injuries without regard to fault." *Id.* Inherent in such a system is the need to place limits on tort-based personal injury suits. *Id.* Thus, under the original 1972 legislation, an insured had a right to sue only when he or she "sustained death, permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part," or "bodily injury … confined solely to the soft tissue of the body" resulting in medical expenses in excess of a $200 threshold." *Id.* (citations omitted). Soft-tissue injuries were defined as "injuries in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body." *Id.* (citations omitted).

As might be expected, auto insurance coverage not premised on fault, which offered so few limitations on lawsuits, and covered so wide an expanse of physical ailments, contributed to a steady increase in insurance premiums. *See generally* Marisa L. Ferraro, *New Jersey and the Verbal Threshold: Imperfect Together*, 54 Rutgers L.Rev. 707 (2002). Consequently, since the passage of the first no-fault insurance act, the New Jersey Legislature has made several attempts to control the costs associated with providing no-fault insurance. The first attempt came with the 1988 adoption of the "verbal threshold" policy option. *Id.* Under that legislation, an insured, choosing between two coverage options, could elect either the verbal threshold (a threshold defined by words rather than a dollar amount), which limited the right to sue for non-economic losses only if the injury fit into one of nine categories, or the traditional tort option, which allowed unrestricted recovery for non-economic damages. *New Jersey Coalition of Health Care Professionals v. New Jersey Dept. of Banking and Insurance*, 323 N.J.Super. 207, 217, 732 A.2d 1063 (App. Div.1999). The nine categories of injury under the verbal threshold included: 1.) death; 2.) dismemberment; 3.) significant disfigurement; 4.) a fracture; 5.) loss of a fetus; 6.) permanent loss of use of a body organ, member, function or system; 7.) permanent consequential limitation of use of a body organ or member; 8.) significant limitation of use of a body function or system; 9.) a medically determined injury. *See* N.J.S.A. § 39:6A–35.

■ Although the new law attempted to restrict law suits, its "permanent," "consequential," and "significant" language generated considerable debate and confusion. Thomas P. Weidner & Michael J. Canavan, *The New Verbal Threshold, But is it Improved?*, 24 Seton Hall Legis. J. 117, 121 (1999). The New Jersey Supreme Court attempted to resolve the confusion in *Oswin v. Shaw*. In that case, the New Jersey Supreme Court denied relief to a plaintiff who suffered soft-tissue injuries, but rejected an approach that would either "automatically vault all soft-tissue injuries over the verbal threshold," or one that would bar such injuries from recovery as a matter of course, opting instead for an inquiry that based relief on the seriousness

of the injury. *Oswin*, 129 N.J. at 319, 609 A.2d 415. Thus, under *Oswin*, in order to pierce the verbal threshold, a plaintiff must first "submit objective, credible evidence" of a serious injury. *Id.* at 315, 609 A.2d 415. This prong can be supported by medical testing and valid diagnostic tests conducted in accordance with the approved protocols." *Jacques v. Kinsey*, 347 N.J.Super. 112, 118, 788 A.2d 932 (Law Div.2001).

■ Although the exact scope of medical analysis required depends on "the nature of the disability or impairment," range-of-motion tests alone will not satisfy the standard required to meet the verbal threshold. *Oswin*, 129 N.J. 290, 609 A.2d 415; *Colon v. Coordinated Transport, Inc.*, 141 N.J. 1, 10, 660 A.2d 1146 (1995) ("ordinarily a diminution in range of motion alone will not satisfy the 'demonstrable objective medical evidence' standard required to support an award of partial-permanent disability"); *Polk v. Daconceicao*, 268 N.J.Super. 568, 573, 634 A.2d 135 (App.Div.1993) ("measurements of limitation of motion alone are insufficient to overcome the verbal threshold"). Neither will a plaintiff's subjective complaints substantiate the seriousness requirement. *Oswin*, 129 N.J. at 314, 609 A.2d 415; *Colon*, 141 N.J. at 9, 660 A.2d 1146 (a showing of permanent injury "may not rest upon petitioner's subjective complaints"); *Serrano*, 367 N.J.Super. 450, 843 A.2d 358, 362 (the first prong of the *Oswin* test "may not be based solely on subjective complaints").

■ Once the court determines that the injury meets the seriousness requirement, it must then decide whether the injury has a serious impact on the plaintiff's life and that plaintiff can show "a nexus between the injury and the disability." *Id.* at 318, 609 A.2d 415. The *Oswin* Court acknowledged that New Jersey's statute did not use the word "serious," however, the Court found that since the law was modeled after a similar law in New York that specifically used the word "serious" injury, New Jersey's adoption of that requirement would be consistent with the Legislature's intent. *Id.* at 315, 609 A.2d 415.

The Court further ruled that questions presented under the verbal threshold should be analyzed in a manner similar to motion for judgment and established a two-part test, often referred to as a "summary judgment plus standard," for making a verbal threshold determination. *See* Weidner & Canavan, *supra* at 122. Under that standard, first, a court must ask whether under any view of the plaintiff's injuries they can be said to fall within at least one of the nine categories that New Jersey's statute specifies, and second, if so, whether the evidence before the court on a motion for summary judgment presents a material dispute of fact regarding the nature and extent of the plaintiff's injuries. *Id.* If the court decides "from whatever medical reports and other evidence submitted in support of and in opposition to [a motion for summary judgment] that the injuries do not, as a matter of law, carry the plaintiff's case across the verbal threshold, then the defendant will prevail on the motion." *Id.* This determination is made by using the seriousness inquiry stated above. *Oswin*, 129 N.J. 290, 305, 609 A.2d 415 ("the question of whether an injury is 'serious' is a matter for the court to decide"); *see also, Chalef v. Ryerson*, 277 N.J.Super. 22, 32, 648 A.2d 1139 (App. Div.1994) ("the court ... is to make the threshold determination [of whether the injury is covered under the statute] when no disputed factual issues are present").

When the 1988 statute failed to achieve its objective of reducing automobile insurance premiums, the Legislature acted again, passing the most current law, the Automobile Insurance Cost Reduction Act

of 1998, with the intention of " 'tighten[ing]' the threshold and further restrict[ing] lawsuits arising from automobile accidents." *Rogozinski v. Turs*, 351 N.J.Super. 536, 549, 799 A.2d 41 (Law Div.2002). In order to meet the goal of lowering automobile insurance, the statute provides for a "revised lawsuit threshold ... which will eliminate suits for injuries which are not serious or permanent, including those for soft-tissue injuries which would more precisely define the benefits available under the medical expense benefit coverage." N.J.S.A. ¶ 39:6A–1.1. The amended statute provided a "limitation on lawsuit option" and a "no limitation on lawsuit option." *See* N.J.S.A. § 39:6A–8a–b. The limitation on lawsuit option abolished the nine categories that existed in the previous act and instead limited the right to sue for those electing the "limitation of lawsuit option" to individuals who have "sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J.S.A. § 39:6A–8a. The statute defines a permanent injury as one in which "the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Id.*

Some debate arose after the passage of AICRA about whether the new legislation, by eliminating the nine referenced categories of injury in *Oswin*, intended to modify or overrule *Oswin's* essential holdings. *See* Ferraro, *supra* 723. Ultimately, courts concluded that the *Oswin* holdings remained in force. *See Rogozinski*, 351 N.J.Super. at 549, 799 A.2d 41, (AICRA does not reflect an intention to modify the essential holdings of *Oswin v. Shaw.* Therefore, the plaintiff must show, by the presentation of objective credible evidence,

that the injuries come within one of the categories of injuries defined in the amendatory legislation"); *Rios v. Szivos*, 354 N.J.Super. 578, 584, 808 A.2d 868 (App. Div.2002) (The legislative histories state that " '[n]o provision of [AICRA] is intended to repeal otherwise applicable case law.' In light thereof and in light of the legislative purpose, it cannot fairly be doubted that *Oswin* survives the new legislation").

■ Courts also debated whether the statute's preamble equated the word "serious" with "permanent," thus eliminating the need to make a finding of both to overcome the threshold. *See* Ferraro, *supra* at 723. That question was settled in *James v. Torres*, when the Court established that the legislature intended that "an injury be both serious and permanent to permit a plaintiff to cross the amended verbal threshold." *James v. Torres*, 354 N.J.Super. 586, 596, 808 A.2d 873 (App. Div.2002). That ruling was recently upheld in *Serrano v. Serrano*, 367 N.J.Super. 450, 843 A.2d 358, 364–65 ("We agree with the observation in *James* that in enacting AICRA, 'the Legislature clearly intended to require that an injury be both permanent and serious to cross the verbal threshold' "). In that case, Plaintiff suffered soft tissue injuries nearly identical to the injuries that Plaintiff Branca alleges, including strains and sprains of the cervical, dorsal and lumbar spine, along with trapezius myofascitis, when the vehicle he was a passenger in collided with another vehicle. *Id.* Although the parties in *Serrano* advanced their arguments based on the "seriousness of impact" requirement, stating essentially that since plaintiff's injuries were permanent, they automatically satisfied the "serious impact requirement," the Court refused to conclude that permanent injuries establish seriousness. *Id.* Instead, the Court held that "although the soft tissue injuries ... are arguably perma-

nent, they do not meet the additional AICRA requirement of seriousness. Without proof of both, plaintiff cannot pierce the present verbal threshold." *Id.* at 7. The Court, however, did not go so far as to preclude all soft tissue injuries, stating: "Our decision not to join the fray over the need to establish 'serious impact' should not be interpreted as conveying the idea that such proof cannot be used by plaintiffs to show that they have a significant or serious injury. Surely evidence of a serious impact on life resulting from a permanent soft tissue injury can be used to establish that the injury is significant or serious." *Id.*

More important debate, and more relevant for our purposes, has surfaced concerning whether the Legislature intended to bar recovery for all soft-tissue injuries under AICRA. The *Serrano* holding reflects what has been a consistent denial of relief for soft tissue injuries, especially those falling under the category of "strains and sprains" because they are not "serious" enough to warrant relief within the meaning of the statute. *See Ferraro, supra* at 726 ("Many cases have been decided in the last few years offering evidence that a strain, sprain, loss of motion, or radiculopathy, by itself, is insufficient to pierce the verbal threshold," citing *Mendoza v. Canales,* N.J.L.J., January 22, 2001, at 249 (N.J.Super.Ct.App.Div. Jan. 12, 2000), in which summary judgment was appropriate "where plaintiff's injuries only included cervical and lumbar strains"); *see also Jacques v. Kinsey,* 347 N.J.Super. 112, 788 A.2d 932 (Law Div.2001) (Plaintiff's muscle spasm supported by range-of-motion tests insufficient to carry claim over verbal threshold). And while the Court in *Serrano* rejected a broad ban on all soft tissue injuries, projecting the possibility that some soft-tissue injuries may rise to the requisite level of seriousness envisioned by the Legislature under AICRA, it offered no examples of cases that would fit into such a category.

■ The *Serrano* holding also clarifies the application of the *Oswin* test under the current law. A growing number of cases have denied recovery for soft-tissue injuries as failing to satisfy the "serious impact" prong under *Oswin*. *See James,* 354 N.J.Super. 586, 808 A.2d 873 (plaintiff failed to establish that her soft-tissue injuries were both permanent and serious, however, Appellate Court went on to rule that plaintiff also failed to show that injuries which prevented her from performing household chores, going up and down stairs and holding her child, had a serious impact on her life that would warrant relief under the statute); *Rogozinski,* 351 N.J.Super. 536, 799 A.2d 41 (Law Div. 2002) (plaintiff who suffered pain and muscle stiffness as a result of his auto accident did not sustain a significant impact on his personal and occupational life under AICRA, even if he could not run, jog, or do household chores). The court in *Serrano,* however, refused to reach the question of serious impact, basing its decision instead on the initial threshold inquiry: is this the type of "serious" injury envisioned by the Legislature under AICRA's "no-limitation-on-lawsuit option?" *Id.* ("Simply put, these [strains and sprains] are not the serious type of soft tissue injuries intended by the Legislature to qualify for tort exemption ... we are not persuaded that [this] type of injury rises to the requisite level of seriousness necessary to pierce the AICRA threshold"). In summary, and applying the rules established in the above cited cases to the present matter, in order to survive a motion for summary judgment under AICRA, the court must first determine if plaintiff can show by objective credible evidence that an injury, which falls within the statutorily defined classes of injuries, is both permanent and serious. *Oswin,* 129 N.J. 290, 609 A.2d 415. If the

injury survives that inquiry, the court then determines whether the injury has had a serious impact on plaintiff's life. *Serrano,* 843 A.2d at 365. Only then does the matter survive summary judgment to be presented to a jury for resolution of "factual disputes about the nature and extent of the plaintiff's injuries." *Oswin,* 129 at 295, 609 A.2d 415.

■ For our purposes, this Court need not strain to envision what sorts of soft-tissue injuries might survive the initial seriousness inquiry and go on to the "serious impact" prong since Plaintiff Branca's "strains and sprains" are nearly identical to those that have most recently been rejected by the Appellate Division as too insignificant to warrant coverage under AICRA. Branca's physician indicates that he suffered "acute, post traumatic, sprain and strain of the cervical, dorsal, and lumbar spines, strains of the latisimus and rhomboid muscles, somatic dysfunction of the bilateral first rib areas, sacroilitis, injury to the myoligamentous supporting structures of the spine, myofascitis, and an aggravation of a previously asymptomatic arthritic condition." (Pl.'s Brief in Opposition to Def's Mot. for S.J., Physician's report at Exh. C). Essentially, Plaintiff's injuries can best be characterized as "strains and sprains" nearly identical to those suffered by plaintiffs in *Serrano* and *James,* which Plaintiff claims causes him soreness and stiffness in his neck and back and requires taking Ibuprofen twice daily. (See Pl.'s Brief in Opposition to Def's Mot. for S.J., Pl.'s Deposition at 207, 216).

■ As to the evidence presented, Plaintiff's physician presents only range of motion tests, which indicate that Plaintiff's mobility is measurably, although minimally, decreased. (See Id., Dr. Soiferman indicates that Plaintiff's cervical, thoracic, and lumbosacral spine have lost 6%, 4%

and 7% mobility respectively). It has already been established that range of motion tests alone, because of their subjective nature, do not suffice under the "objective, credible, evidence" standard established in *Oswin. See also, Jacques,* 347 N.J.Super. at 119, 788 A.2d 932 ("Due to the inherent subjective nature of range of motion tests, findings of limitation of range of motion alone have not presented sufficient credible medical proofs to pass the verbal threshold"). However, this case is further weakened by the fact that Plaintiff was involved in an accident sometime in the 1980's for which he suffered a minor back injury. (Def.'s Motion for S.J., Def.'s Deposition at 209). Plaintiff must not only allege injuries that are permanent and serious in character as required under AICRA, but must also establish a causal nexus between the accident and the injuries. *See Polk,* 268 N.J.Super. 568, 634 A.2d 135. Although Plaintiff's physician acknowledged Plaintiff's prior accident in his initial consultation after the accident, he failed to establish in his final report or the required physician's certification that the current injuries are not a result of preexisting complaints. (Def.'s Mot. for S.J. at Exh. D, Physician's intake report indicating that Plaintiff "relates a motor accident many years ago" for which he "had no residuals shortly after the incident"). In his certification, Plaintiff's physician incorporates his medical reports in which he opines that Plaintiff's injuries were "a direct result of the above accident," and are permanent, but fails to engage any discussion of the *relation of those injuries to the prior accident.* A physician's assertions, especially where Plaintiff was previously injured, without any medical support, cannot satisfy the objective credible evidence requirement. While a physician's certification is required under AICRA[1], the certification

---

1. See *N.J.S.A.* 39:6A–8(a) ("plaintiff shall, within 60 days following the date of the an- swer to the complaint by the defendant, pro-

542

is not sufficient to establish permanent and serious injury. *See Rios v. Szivos*, 354 N.J.Super. 578, 584, 808 A.2d 868 (App. Div.2002) ("the certification is intended as an anti-fraud measure to assure legitimacy; it is necessary to state a claim, not sufficient to establish one, and will be subject to challenge through the normal discovery and summary judgment processes") (citations omitted). Plaintiff's certification states simply that Plaintiff's injuries are "permanent since his cervical, thoracic, and lumbar spine and bilateral first ribs have not healed to function normally and will not heal to function normally with further medical treatment." (Def.'s Mot. for S.J. at Exh. B, Physician's certification). Dr. Soiferman incorporates his medical reports, which consist of range of motion studies, as the "objective clinical evidence" upon which he rests his conclusion. New Jersey case law has well established that injuries of this sort, supported by range-of-motion studies and Plaintiff's complaints of pain are insufficient to establish serious injury

Based on the nature of Plaintiff's soft-tissue injuries, which are essentially strains and sprains of his neck and back, the Court finds that these injuries are not serious enough within the meaning of AICRA to overcome the "limitation on lawsuit" exceptions. In light of the policies which have culminated in the passage of this most recent no-fault legislation, the Court finds it fitting to follow *Serrano's* adherence to *Oswin*, and deny Plaintiff's claim based on his failure to establish that his injuries were serious enough for coverage under the "limitation on lawsuit option" as contemplated by the Legislature under AICRA.

vide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the

*CONCLUSION*

For the reasons set forth above, the Court grants defendants motion for summary judgment. An appropriate order will be entered.

## ORDER

THIS MATTER having come before the Court on the motions of Defendant James Matthews motion for summary judgment;

The Court having reviewed the record and the submissions of the parties; and

For the reasons stated in the Court's opinion of this date;

**IT IS** on this 28th day of April, 2004 **HEREBY**

**ORDERED** that Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's complaint is **DISMISSED**.

No Costs.

plaintiff was referred by the treating physician").