**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2338-18T2

SAMANTHA WHITE,

     Plaintiff-Appellant,

v.

PEGGY RAMIREZ,

     Defendant-Respondent.

_____

SAMANTHA WHITE,

     Plaintiff-Appellant,

v.

RICARDO A. OCAMPO and
RO COMPLETE SOLUTIONS,
CORPORATION,

     Defendants-Respondents.

_____

Argued November 20, 2019 – Decided December 16, 2019

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket Nos. L-3947-16 and L-1959-17.

Daniel J. Williams argued the cause for appellant (John J. Pisano, of counsel and on the brief).

Steven Ira Greenberg argued the cause for respondent Peggy Ramirez (Law Offices of Debra Hart, attorneys; Steven Ira Greenberg, of counsel and on the brief).

Harry D. Mc Enroe argued the cause for respondents Richardo A. O'Campo and Ro Complete Solutions, Corp. (Tompkins Mc Guire Wachenfeld & Barry LLP, attorneys; Harry D. Mc Enroe, of counsel and on the brief).

PER CURIAM

Plaintiff filed two Law Division complaints, related to two separate automobile accidents, occurring four months apart. She appeals from a December 7, 2018 order granting defendants Peggy Ramirez, Ricardo A. Ocampo, and RO Complete Solutions, Corp. (RO) summary judgment, and a January 25, 2019 order denying reconsideration. We affirm.

The first accident occurred October 20, 2016, involving plaintiff and Ramirez. The day of the accident, plaintiff presented to the emergency room complaining of neck and back pain, was treated, discharged, and instructed to follow up with a primary care doctor. Dr. Alan Epstein, a chiropractor and plaintiff's expert, commenced treating her on November 7, 2016. According to

his treatment records, she complained of neck, back, left knee, and jaw pain. Plaintiff also sought treatment from an orthopedist, Dr. Sheref Hassan, beginning November 2016, for left knee and left shoulder pain. Dr. Hassan determined her left knee injury was related to the October 20, 2016 accident and referred her for MRI testing.

Plaintiff underwent MRIs of her cervical and lumbar spine, and left knee in November 2016, which showed herniated discs with thecal sac compression at the C5-6, C6-7, and L5-S1 levels; bulging discs at the L2-3, L3-4, and L4-5 levels; and a complex tear of the posterior horn of the left medial meniscus. Plaintiff followed up with Dr. Hassan in January 2017, complaining of swelling in her left knee, sharp pain, and "giving way" episodes. Dr. Hassan reviewed the MRI of plaintiff's left knee and diagnosed a complex tear of the medial meniscus.

On February 16, 2017, plaintiff was involved in a second automobile accident with a vehicle Ocampo operated and RO owned. Plaintiff visited the emergency room that day and was diagnosed with cervical and thoracic sprains. Dr. Epstein continued treating her until August 17, 2017.

Although Epstein treated plaintiff after the second accident, his treatment records do not reference the second accident. He issued a report in April 2017,

which did not mention the second accident. A May 2017 report was the first time he mentioned the February 2017 accident. Specifically, Epstein's report addressed plaintiff's left knee injury from the first accident and reported plaintiff injured her right knee in the second accident, namely, a complex tear of the posterior horn of the right medial meniscus. However, plaintiff's emergency room records from the second accident referenced no type of right knee pain, discomfort, or injury.

Epstein's reports noted that plaintiff's past medical history included only asthma. Plaintiff was deposed in May 2018, and testified that other than suffering from lower back pain and sciatica in 2012 and 2013, she never suffered pain or discomfort in any part of her back other than after the two car accidents in question. However, plaintiff's hospital records detailed that from 2008 until 2015, she received treatment on at least eight occasions for complaints of back or neck pain as follows: (1) January 9, 2008, cervical strain diagnosis after a motor vehicle accident; (2) January 30, 2010, lower back strain diagnosis for another motor vehicle accident; (3) June 24, 2013, X-ray conducted of lumber spine due to history of "lumbago;" (4) July 21, 2013, clinical history of "back pain for one month," and MRI of lumbar spine demonstrating disc herniation at L5-S1; (5) August 7, 2013, physical therapy evaluation regarding low back pain;

(6) July 6, 2015, complaints of mid back pain; (7) August 1, 2015, complaints of upper back pain; and (8) October 24, 2015, complaints of "intermittent back pain [for] several months."

Plaintiff's primary care physician's records revealed complaints of persistent back pain during August and October of 2013. Plaintiff's treatment records from 2015, showed continuing complaints of "severe back pain" and referenced a 2012 MRI, showing a herniated disc.

Defendants filed motions for summary judgment, which the motion judge denied without prejudice. The judge granted plaintiff additional time to serve any and all medical reports she intended to rely upon at trial, because plaintiff's expert report lacked a comparative analysis of her injuries. In response, plaintiff furnished an additional report from Epstein dated September 17, 2018, which stated:

> By way of a comparative analysis, when comparing the injuries [plaintiff] received in her accident[s] of 10/26/16 and 2/16/17, please review the following.
>
> In the accident of 10/26/16 she suffered injuries that were objectively documented to include MRI examination of the cervical spine, lumbar spine and left knee. The injuries related to this accident included central subligamentous disc herniation with thecal sac compression at C5/6 and C6/7; annular disc bulging with thecal sac compression at L2/3, L3/4 and L4/5 and central subligamentous disc herniation with thecal sac

compression at L5/S1; and left knee complex tear of the posterior horn of the medial meniscus.

In the accident of 2/16/17 she suffered injuries that were objectively documented to include MRI examination of the right knee which revealed a complex tear of the posterior horn of the medial meniscus.

By way of comparative analysis, the central subligamentous disc herniation with thecal sac compression at C5/6 and C6/7; annular disc bulging with thecal sac compression at L2/3, L3/4 and L4/5 and central subligamentous disc herniation with thecal sac compression at L5/S1; and left knee complex tear with a posterior horn of the medial meniscus were solely caused by the accident of 10/20/16. The second accident of 2/16/17 caused an exacerbation of the prior noted spinal disc injuries; however, the right knee complex tear of the posterior horn of the medial meniscus is solely caused by the accident of 2/16/17.

The report did not address any of plaintiff's pre-existing conditions prior to the first accident.

Defendants renewed their motions for summary judgment, which the motion judge granted. The judge held:

[B]ecause of deficiencies, this [c]ourt allowed additional time and entered an order stipulating . . . [p]laintiff's counsel had [thirty] days from the date of that order to serve any and all medical reports he intended to rely upon at the time of trial. . . .

. . . Epstein, the plaintiff's treating chiropractor submitted a supplemental report . . . less than a page in length and devoid of a comprehensive analysis. The

6

report makes conclusionary statements as to the cause of the plaintiff's injuries without discussing plaintiff's prior medical history, as she had complained of back and neck issues well before the 2016 accident. The report does not perform a sufficient Polk[1] analysis as although it does attempt to link injuries between the [20]16 and [20]17 accident, it ignores plaintiff's medical history prior to 2016.

This was one of the reasons that the [c]ourt had previously given to plaintiff's counsel to have [an] additional [thirty] days to make that connection and obtain a Polk analysis from Epstein or one of the plaintiff's other treating physicians, which this [c]ourt finds has failed.

The knee injuries, plaintiff is solely relying on Epstein's chiropractic report.

. . . [T]he chiropractor, in this case, attempts to give a statement on the knee but it appears somewhat conclusionary and beyond the scope of what the opinion attempts to portray. It should be barred as a net opinion, this chiropractic report.

Taking all facts, most favorable to the non-moving party, this [c]ourt finds that [defendants] are entitled to summary judgment. The matter arises out of two automobile accidents, one in [20]16, one in [20]17. Plaintiff was given an opportunity after . . . summary judgment to submit additional medical reports in order to connect causation as well as the opportunity to perform a sufficient . . . Polk analysis. Plaintiff did not avail [herself] of that opportunity. Instead submitting a conclusionary expert report from a chiropractor . . . that does not connect the injury suffered in the accident

---

1 Polk v. Daconceicao, 268 N.J. Super. 568 (App. Div. 1993).

7

with the back injuries complained [of] prior thereto. The September 17, [20]18, expert report makes no mention of how plaintiff's injuries affected any . . . of the back issues that she was complaining [of] prior to 2016. Plaintiff failed to perform the required Polk analysis and defendants should be entitled . . . to summary judgment.

In reference to the knee, the September 17, 2018 report fails to link the knee injuries with the spine. Fails to link it other than a net conclusionary opinion to the accident. As Bedford[2] holds chiropractors are able to treat injuries if the injury is causally related to that of the spine. Giving the benefit of the doubt and saying that because it is a joint that the chiropractor can treat that and I'll [o]pine on that, his report fails to make the critical link in anything other than a net opinion regarding the knee injury. . . .

The reports would be inadmissible under [N.J.R.E.] 703 as a net opinion and the motions for summary judgment are both granted.

Plaintiff moved for reconsideration. She argued Dr. Hassan could testify to her lack of right knee symptoms prior to the second accident. The judge denied the motion and reiterated that pursuant to Bedford, Epstein was not qualified to opine or treat a knee injury unless it was causally related to the spine, and plaintiff failed to furnish any expert report or testimony linking her knee injury to her spine. The judge also found plaintiff failed to provide

---

[2] Bedford v. Riello, 195 N.J. 210 (2008).

treatment records from Dr. Hassan dated after the second accident. Therefore, plaintiff had insufficient evidence to establish causation for her knee injuries.

I.

Appellate review of summary judgment is "de novo, applying the same standard as the trial court. The court considers whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 540-41 (App. Div. 2019) (internal citations and quotation omitted). "Reconsideration should be granted only where 'either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]'" Branch, 459 N.J. Super. at 541 (App. Div. 2019) (alterations in original) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). We review the denial of a motion for reconsideration for an abuse of discretion. Cummings, 295 N.J. Super. at 389.

Plaintiff argues the motion judge erred when he concluded she was required to proffer a Polk analysis because the temporal proximity of her accidents placed the burden on defendants to apportion the cause of the injuries

sustained from each accident. She asserts the judge also erred in requiring her to furnish a comparative analysis for the first accident and her prior conditions because she did not plead an aggravation of a pre-existing injury. She contends summary judgment was improper because a reasonable fact-finder could conclude defendants' negligence caused the plaintiff permanent injuries. Plaintiff argues she met the burden of proof on causation because the first accident injured her, and the second exacerbated her injuries and caused an entirely new injury to her right knee.

A.

A personal-injury plaintiff bears the burden of proving defendant's negligence proximately caused the alleged injuries and damages. Paxton v. Misiuk, 34 N.J. 453, 463 (1961). Apportionment based on causation is favored. See, e.g., Poliseno v. Gen. Motors Corp., 328 N.J. Super. 41, 55 (App. Div. 2000); Reynolds v. Gonzalez, 172 N.J. 266, 282 (2002). We have stated:

> It is generally plaintiff's burden to prove not only that defendant was negligent, but also that defendant's negligence was a proximate cause of the injuries and damages suffered. . . . [P]laintiff, generally, must apportion or relate damages to defendant's wrongful acts. If proofs establish that plaintiff's injuries, for example, pre-existed and were unconnected with defendant's negligence, then defendant is not responsible for the pre-existing injuries. A defendant

should be responsible only for the value of the interest he [or she] destroyed.

[O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am., 361 N.J. Super. 264, 274 (App. Div. 2003) (second alteration in original) (citations and quotations omitted).]

"When a plaintiff alleges aggravation of pre-existing injuries [or conditions] as the animating theory for the claim, then plaintiff must produce comparative evidence to move forward with the causation element of that tort action." Davidson v. Slater, 189 N.J. 166, 170 (2007). "This must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma. Without a comparative analysis, the conclusion that the pre-accident condition has been aggravated must be deemed insufficient to overcome the threshold of N.J.S.A. 39:6A-8a." Polk, 268 N.J. Super. at 575. However, "[w]hen a plaintiff does not plead aggravation of pre-existing injuries, a comparative analysis is not required." Davidson, 189 N.J. at 170. "[P]laintiff can carry her burden of moving forward in her non-aggravation case by demonstrating the existence of a permanent injury resulting from the automobile accident without having to exclude all prior injuries to the same body part." Ibid.

Plaintiff's first accident was not subject to the verbal threshold, whereas the second accident was a threshold case. Regardless, a comparative analysis was necessary because plaintiff had experienced neck and back problems prior to the first accident, which she alleged injured those areas and were also injured in the second accident. Indeed, "to pass the verbal threshold for permanent injury, plaintiff must establish, within a reasonable degree of medical probability and through a physician's certification," "qualifying injury," "permanency," "causation," and "objective clinical evidence." Jacques v. Kinsey, 347 N.J. Super. 112, 117 (Law Div. 2001).

The cases plaintiff relies upon for the proposition that the burden of proof shifted to defendants to provide a comparative analysis on causation, are inapposite. Indeed, the cases cited involved a successive-impact involving multiple parties in one crash, a crash where a defendant caused the injuries, but plaintiff's own negligence allegedly exacerbated the injuries, and a case where a plaintiff alleged the injuries were a result of both the collision and a product defect in the car. See Campione v. Soden, 150 N.J. 163, 167-68 (1997); Schwarze v. Mulrooney, 291 N.J. Super. 530, 533, 539-40 (App. Div. 1996); Thornton v. Gen. Motors Corp., 280 N.J. Super. 295, 296-97 (Law. Div. 1994). The motion judge did not err in determining plaintiff had the burden of proof on

A-2338-18T2

causation. A comparative analysis of plaintiff's neck and back injuries from each accident was necessary to apportion each defendant's responsibility for her damages.

## B.

We reject plaintiff's argument that Epstein's expert report was sufficient evidence of her injuries and survive summary judgment. Epstein's report was a net opinion that would cause the jury to speculate on the alleged permanency of plaintiff's injuries and causation. As a general proposition, "[t]he net opinion rule . . . mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and methodology are reliable.'" Townsend v. Pierre, 221 N.J. 38, 55 (2015) (emphasis added) (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Chiropractors may "diagnose, adjust and treat the articulations of the spinal column and other joints, articulations and soft tissue and . . . order and administer physical modalities and therapeutic rehabilitative and strengthening exercises." N.J.A.C. 13:44E-1.1A. In Bedford, the Supreme Court stated "whether the adjustment of a structure beyond the spine properly falls within the scope of chiropractic practice is dependent on whether the adjustment bears a

13

nexus to a condition of the spine." 195 N.J. at 223-26. "[I]nterpretation of an MRI may be made only by a physician qualified to read such films." Brun v. Cardoso, 390 N.J. Super. 409, 421-22 (App. Div. 2006). Where, as here, a chiropractor is not relying upon an MRI report, rather the MRI itself—he must be qualified to read the MRI. Ibid.

Epstein's report was speculative because it did not contain reliable information. He did not consider plaintiff's prior medical records indicating she had long-standing back and neck issues. Plaintiff had numerous hospital visits from 2008 until 2015, relating to neck and back complaints. In late 2015, plaintiff's primary care physician noted her persistent back pain complaints; due to "recurrent attacks of low back pain," somedays plaintiff "[could not] even get up from bed." Epstein's report referenced none of this history. His treatment records after the second accident omitted any reference to the second accident during nearly three months of treatment.

Although plaintiff argued her knee injuries were uniquely tied to distinct accidents and unrelated to her pre-accident medical history, she failed to adduce the necessary proofs to survive summary judgment. Indeed, there is no evidence Epstein was qualified to read the MRIs of plaintiff's knees, yet his report cited the MRIs and, without discussion, posited the accidents were the cause of her

injuries. Furthermore, he did not link plaintiff's knee injuries with his chiropractic treatment of her spine. Even though, on reconsideration plaintiff maintained she could call Dr. Hassan to testify about the lack of right knee symptoms prior to the second accident, she never furnished Dr. Hassan's treatment records dated after the second accident.

Plaintiff could prove neither proximate causation nor apportion damages. For these reasons, summary judgment in favor of defendants was appropriate, and the denial of reconsideration was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2338-18T2